IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ADRIAN FORD, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:18-cv-03927-PX |
| COLLINGTON LIFE CARE, *et al.*, | * | |
| Defendants. | * | |

\*\*\*
**<u>MEMORANDUM OPINION</u>**

This employment discrimination case concerns pro se Plaintiff Adrian Ford's claimed adverse treatment on account of her national origin. Pending before the Court are Defendants' Motions to Dismiss. ECF Nos. 7, 9. The motions are fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court GRANTS Defendants' motions.

**I.    Background[1]**

On June 20, 2017, Plaintiff Adrian Ford began working for Defendant Collington Life Care ("Collington"), a senior living facility, as a Geriatric Nursing Assistant ("GNA"). ECF No. 1-2 at 1.[2] Ford worked under the direct supervision of Defendant Emily Mayembe. *Id.* Ford was one of two African American GNAs under Mayembe's supervision, while all other employees, including Mayembe, were of African descent. *Id.* Ford asserts she was "treated less favorably" and "given more work," including more difficult work assignments, relative to the GNAs of African descent. *Id.* Although Collington's policy was to maintain a ten-to-one nurse to patient ratio, Ford's ratio exceeded this policy. *Id.* When Ford approached management to

---

[1] For purposes of this Opinion, the Court accepts the facts pleaded in the Complaint as true and construes them most favorably to Plaintiff. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).

[2] The Court cites in part to Ford's Charge of Discrimination, which she attached to the Complaint as factual support for her claims. *See* ECF No. 1-2.

express her concerns, she was told that she "could either perform the duties as assigned or leave employment." *Id.*

On September 2, 2018, Ford filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging national origin discrimination and retaliation. *See* ECF No. 1-2. The EEOC then issued a Notice of Right to Sue letter on September 20, 2018. ECF No. 1 at 6. On December 19, 2018, Ford filed this action against Collington and Mayembe, alleging national origin-based discrimination, retaliation, and harassment in violation of Title VII of the Civil Rights Act of 1964. *Id.* at 4–5. Defendants now move to dismiss the Complaint in its entirety, arguing Ford has failed to state a claim for relief.

## II.     Standard of Review

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

A pro se litigant's complaint must be construed liberally to allow the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Eccleston v. Prince George's Cty.*, No. DKC 15-3871, 2017 WL 430384, at *1 (D. Md. Feb. 1, 2017) ("Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers.") (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Nonetheless, liberal construction

2

does not mean that a court must ignore a clear failure in the pleadings to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Nor should the court rewrite a complaint to ensure that it survives a motion to dismiss. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. Mayembe's Motion

Ford brings Title VII claims against Mayembe individually and in her capacity as Ford's supervisor. Mayembe moves to dismiss the Complaint against her solely on the ground that she is not a proper defendant under Title VII. It is well-settled law that "supervisors are not liable in their individual capacities for Title VII violations." *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998); *see also Lewis v. Balt. City Bd. of Sch. Comm'rs*, 187 F. Supp. 3d 588, 594 (D. Md. 2016). Accordingly, the Court dismisses with prejudice Ford's claims against Mayembe.

### IV. Collington's Motion

Collington contends that Ford's national origin-based discrimination, hostile work environment, and retaliation claims fail because Ford fails to plead facts establishing a prima facie case. Although Collington is correct that Ford must prove at trial her prima facie case as first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the prima facie case "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Put more precisely, a plaintiff need not plead a prima facie case to survive a motion to dismiss. *See id.* at 515; *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584–85 (4th Cir. 2015). Rather, the complaint must allege facts that "raise a right to relief above the speculative level." *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). Nevertheless, the elements of a prima facie

case provide helpful guidance when reviewing "the adequacy of the allegations." *Niner v. Garrett Cty. Pub. Works,* No. ELH-17-2948, 2018 WL 3869748, at *16 (D. Md. Aug. 15, 2018). With this standard in mind, the Court considers each claim separately.

Title VII makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Workplace discrimination typically involves either disparate treatment or a hostile work environment. Ford maintains that she was subject to both forms of discrimination. *See* ECF No. 1 at 5.

### a. Disparate Treatment

As to her disparate treatment claim, Ford must aver facts by which the Court could infer plausibly (1) Ford's membership in a protected class; (2) her satisfactory job performance; (3) that she was subject to an adverse employment action; and (4) that others outside the protected class with similar job functions were treated more favorably. *Coleman*, 626 F.3d at 190. At the motion to dismiss stage, the Complaint must, at a minimum, "include sufficient factual allegations to show plausibly that the plaintiff suffered an adverse employment action because of her" national origin. *Cobb v. Towson Univ.*, No. ELH-14-02090, 2015 WL 3654562, at *7 (D. Md. June 10, 2015).

Collington primarily contends that Ford has not stated any adverse employment action. To constitute an adverse action, the employer's "conduct must materially alter the terms, conditions, or benefits of employment." *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 329 (D. Md. 2003). Courts generally focus on whether the plaintiff alleges "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). "Although something less

4

than an 'ultimate employment decision' may constitute an adverse employment action, Title VII does not remedy everything that makes an employee unhappy." *Jeffers*, 264 F. Supp. 2d at 329.

The entirety of Ford's disparate treatment claim hinges on being "given more work" and "more difficult assignments" compared to other GNAs under Mayembe's supervision. ECF No. 1-2 at 1. These facts, viewed most favorably to Ford, do not state an adverse employment action under Title VII. Ford does allege any facts to establish how her assignments were more difficult or how her workload differed from other similarly situated GNAs. *See Laguerra v. U.S. Dep't of Treasury*, No. TDC-14-2701, 2016 WL 3455373, at *12 (D. Md. June 20, 2016) ("Even if [plaintiff's] supervisors expected too much of her, unreasonable workplace standards are not necessarily unlawful discriminatory standards."), *aff'd*, 671 F. App'x 84 (4th Cir. 2016). Nor does the Complaint describe any way in which Ford's work assignments affected a term, condition, or benefit of her employment. Ford's disparate treatment claim fails to plead that Ford experienced an adverse employment action to support a Title VII claim.

### b. Hostile Work Environment

Ford also asserts a hostile work environment claim. To survive dismissal, a plaintiff must aver facts from which this Court could infer plausibly that plaintiff experienced (1) unwelcome acts; (2) based on a protected characteristic; (3) that were sufficiently severe or pervasive to alter the conditions of employment and to create an abusive work environment; and (4) are imputable to the employer. *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495–96 (4th Cir. 2015).

Collington argues that Ford has failed to state conduct that was "sufficiently severe or pervasive" to state a claim. In assessing the sufficiency of this prong, the Court considers the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

5

employee's work performance." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). This prong is met "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Id.* (citation omitted). In contrast, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (citation omitted).

Ford contends that, with respect to her additional assignments, she was "constantly threat[ened]" that she would be removed if she failed to perform, and was further told to either perform her work "as assigned or leave employment." ECF No. 1 at 6; ECF No. 1-2 at 1. Taking all this conduct together, and viewed most favorably to Ford, these allegations fail to meet the "severe or pervasive standard." *See Chang Lim v. Azar,* 310 F. Supp. 3d 588, 599 (D. Md. 2018) (not severe or pervasive where plaintiff alleged "no physically threatening conduct, abusive communication, or even raised voices"); *Vincent v. MedStar S. Md. Hosp. Ctr.*, No. TDC-16-1438, 2017 WL 3668756, at *9–10 (D. Md. Aug. 22, 2017) (finding no hostile work environment where supervisor yelled at employee, called her "stupid," refused to communicate with her, and harassed her almost daily). The conduct Ford alleges mostly evidences a conflict between Collington and Ford over work-related expectations. *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (Plaintiff's "allegations, which largely include the actions taken against her in response to the concerns regarding her performance, fall well short of alleging an abusive working environment."). Moreover, Ford has not alleged any facts that Collington's take-it-or-leave-it message was motivated by Ford's status as an African American. *Booth v. Cty. Exec.*, 186 F. Supp. 3d 479, 487 (D. Md. 2016) (relevant to racial harassment analysis that supervisor

6

did not use "racial epithets or racially derogatory language"). Without more, Ford fails to state that she was a victim of severe or pervasive harassment based on her national origin.

   c. **Retaliation**

Finally, Ford asserts that Collington retaliated against her for complaining about the volume of work she had been assigned. Title VII's anti-retaliation provision prohibits an employer from taking adverse action against an employee because she has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e–3(a); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59–60 (2006). To sustain a retaliation claim, a plaintiff must show that she (1) engaged in protected activity; (2) was subject to an adverse employment action; and (3) that a causal link exists between the two. *Coleman*, 626 F.3d at 190.

Collington again asserts Ford has failed to allege an adverse employment action. Relevant to the analysis, the Court notes that an "adverse action" to support a retaliation claim is construed more broadly than those sufficient to support a discrimination claim. *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018). For retaliation claims, the adverse action "need not 'affect the terms and conditions of employment;'" the acts will be considered sufficiently adverse if they "'might have dissuaded a reasonable worker' from engaging in protected activity." *Id.* (quoting *Burlington*, 548 U.S. at 64, 68).

The only allegations in support of this claim are that Ford was told to either complete her work or leave employment after "voicing [her] concerns" and similarly that she was threatened to be "removed from [her] assignment" after she "questioned the situation." ECF No. 1 at 6; ECF No. 1-2 at 1. Assuming, most charitably to Ford, that she engaged in protected activity, *Strothers*, 895 F.3d at 328 (protected activity includes "complaining to superiors about suspected

7

violations of Title VII") (citation omitted), Ford has failed to allege that in response, Collington took adverse action against her. That Collington conditioned Ford's employment on completing her assigned work alone does not constitute a sufficiently adverse employment action. *See Burlington*, 548 U.S. at 68 ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."). Accordingly, dismissal of Ford's retaliation claim is also warranted.[3]

### V. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' Motions to Dismiss. ECF Nos. 7, 9. A separate Order follows.

| 9/3/2019 | /S/ |
|---|---|
| Date | Paula Xinis |
| | United States District Judge |

---

[3] On May 30, 2019, the Court received a letter from Ford that appears to be a motion to compel evidence. ECF No. 17. As the Court has not opened discovery in this matter, the letter is not ripe. Further, since the Court is dismissing the Complaint for failure to state a claim, the Court denies Ford's request as moot.